UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELLE MARINUS, et al.,

    Plaintiffs,

    v.

ALTRIA GROUP DISTRIBUTION COMPANY

    Defendant.

No. C 11-4665 PJH

**ORDER GRANTING MOTION TO TRANSFER**

On February 15, 2012, defendant's motion for an order transferring venue came on for hearing before this court. Plaintiffs appeared by their counsel Kristi Rothschild, and defendant Altria Group Distribution Company ("AGDC") appeared by its counsel Amanda Sommerfeld and Wood Lay. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

**BACKGROUND**

This is a wage-and-hour case filed as a proposed class action. AGDC provides "distribution and consumer engagement services" to Altria Group, Inc.'s tobacco companies nationally, including in California.[1] AGDC is organized into sales "regions" – California is Region 5 – and organizes the sales regions into "sections." There are currently two sections that cover California – Section 53 covers Northern California, and Section 54 covers Southern California. The sections are further divided into sales "territories."

Each territory is assigned a Territory Sales Manager ("or "TSM") who is responsible

---

[1] According to AGDC, it is a wholly-owned subsidiary of Altria Enterprises II LLC, which in turn is a wholly-owned subsidiary of Altria Group, Inc.

for sales, consumer relationship, management, and overall success of his/her assigned territory. TSMs in California are assigned to call on specific retail stores located within their assigned territories each month.

The named plaintiffs are former employees of AGDC. Michelle Marinus ("Marinus") was employed as a TSM from April 2001 to February 2011, and was assigned to Section 54. Cyndi Vance ("Vance") was employed as a TSM from September 2009 until November 2010, when she went on medical leave. She was also assigned to Section 54.

Marinus lived in Santa Barbara, California at the time of her termination. Vance lived in Atascadero (San Luis Obispo County) when she was terminated. At present, Marinus continues to live in Santa Barbara, and Vance still lives in Atascadero.

Section 54 is headquartered in Pasadena, California, and Section 53 is headquartered in Pleasanton, California. TSMs report directly to a Unit Manager, who in turn reports to a District Manager. Marinus' and Vance's Unit Manager and District Manager were both assigned to the Pasadena office and Section 54. According to AGDC's Vice President of Regional Sales for Region 5, Marinus' and Vance's Unit Manager currently resides in Lompoc (San Luis Obispo County) and their District Manager currently resides in Valencia (Los Angeles County).

Plaintiffs bring this action as a state-wide class action on behalf of all current and former TSMs within the State of California, who are or were employed by AGDC. The proposed class consists of "[a]ll current and former salaried Territory Sales Managers who worked for [d]efendant at any time in California from four years prior to the time the action is filed to the time the action is certified as a class action." FAC ¶ 35.

Plaintiffs assert claims for failure to pay overtime wages, failure to reimburse employees for business-related expenses, failure to timely pay wages upon termination, failure to provide and document meal and rest break periods, and failure to provide accurate and detailed records of hours worked, all in violation of the California Labor Code. Plaintiffs also assert a claim pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Plaintiffs seek to recover overtime compensation, regular wages,

unreimbursed business expenses, and other wages and penalties due under the California Labor Code, Industrial Welfare Commission Wage Orders, and the California Business & Professions Code.

Along with its motion to transfer venue, AGDC also seeks an order dismissing the complaint for failure to state a claim.  Because the court finds that transfer to the Central District is warranted under 28 U.S.C. § 1404(a), the court does not address the motion to dismiss or the arguments made in connection with that motion.

**DISCUSSION**

A.  Legal Standard

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The party moving for transfer of a case bears the burden of demonstrating transfer is appropriate.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

In deciding a motion to transfer venue, the district court must consider each of the factors enumerated in § 1404(a) – whether the action could have been brought in the proposed transferee district, the convenience of the parties, the convenience of the witnesses, and the interests of justice.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).

Beyond this, a district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498 (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  In considering whether to transfer a case under § 1404(a), the court may consider a number of non-exclusive factors – the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses, the ease of access to the evidence, the familiarity of each forum with the applicable law, the feasibility of consolidation with other claims, any local interest in the controversy, and the relative court congestion and time to trial in each forum. See Williams v. Bowman, 157 F.Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing Jones, 211

F.3d at 498-99).

B.  AGDC's Motion to Transfer

AGDC argues that this case should be transferred to the Central District of California, for the convenience of parties and witnesses. First, AGDC contends that the case could have been brought originally in the Central District, as that is where both plaintiffs worked for AGDC, and where they live.

Second, AGDC asserts that transfer is warranted under the factors set forth in Jones – (1) the location where relevant agreements were negotiated and executed; (2) the state most familiar with governing law; (3) the plaintiffs' choice of forum; (4) the respective parties' contacts with forum; (5) the contacts relating to plaintiffs' cause of action in chosen forum; (6) the differences in costs of litigation in two forums; (7) the availability of compulsory process to compel attendance of non-party witnesses; and (8) the ease of access to proof. Id., 211 F.3d at 498.

AGDC focuses primarily on factors (3), (4), (5), (6) and (8). AGDC asserts that the contacts of the parties with the Central District, the residence of witnesses in the Central District, and the existence of documentary evidence in the Central District all weigh in favor of transfer.

AGDC contends that both plaintiffs have more contacts with the Central District than the Northern District, as their claims arise out of their employment in the geographic area covered by the Central District. AGDC notes that the heart of this case concerns the hours that plaintiffs worked, what their job duties were, and whether they took meal and rest periods. AGDC contends that the witnesses with knowledge of those facts will include plaintiffs' supervisors and co-workers. According to AGDC, the supervisors reside in Lompoc (Santa Barbara County) and Valencia (Los Angeles County), and the co-workers are more likely to reside in the Central District than elsewhere, because the plaintiffs lived and worked there. AGDC claims that between them, the two named plaintiffs managed and sold to over 300 retail stores, and that of those, 298 are in the Central District.

With regard to ease of access to sources of proof, AGDC asserts that written

4

documentation pertaining to plaintiffs' employment will be more readily available in the Central District, because both plaintiffs were employed in Section 54, headquartered in Pasadena.

Third, AGDC argues that it will be less costly to litigate in the Central District, for the simple reason that it will cost more to transport witnesses to the Northern District, than to proceed in the Central District where the witnesses (and the plaintiffs) are located.

Finally, AGDC asserts that the plaintiffs' choice of forum is not entitled to any weight in this case because plaintiffs do not reside in this forum, the allegations have minimum contacts with this district, and the allegations have no connection with this division. AGDC contends that Marinus was assigned to and worked in Santa Barbara and Ventura Counties, and did not work in any county in the Northern District; while Vance was also assigned to work in the Central District, mostly in San Luis Obispo County, and or her approximately 150-160 stores, all except two were located in the Central District. The other two of Vance's stores were located in Monterey County, but according to AGDC, call logs completed by Vance show that she visited those two stores infrequently.

AGDC asserts that courts give little or no weight to the forum plaintiffs choose when they do not reside in the chosen district, and in addition, that where it appears that a plaintiff's choice of forum is the result of forum shopping, that provides an additional reason for according that choice little deference.

In opposition, plaintiffs assert that their choice of forum is entitled to deference, and that AGDC has not met its burden of showing that the convenience of parties and witnesses and the interests of justice require transfer to another district. In particular, plaintiffs contend that the eight Jones factors are not "helpful," as this is a class action and the factors in Jones are "focused on individual party litigation."

Plaintiffs assert that their contacts with the Northern District are more extensive than AGDC claims. According to plaintiffs, Marinus worked in Monterey County at least 20 times during her employment with AGDC, and had two multiple-day training sessions in San Francisco. Plaintiffs claim that part of Vance's territory covered Monterey County (two

5

stores in San Ardo, plus the PX at Camp Roberts, and Lake Naciemiento Resort and San Antonio Lake Resort stores), and that not all of her work in Monterey was recorded by the sales call logs.

Plaintiffs also contend that witnesses relevant to the action will be coming from all over the state and perhaps some from out-of-state. Both named plaintiffs provide declarations stating that it would be more convenient for them personally to have the case heard here. Both claim that it is easier to drive north than south because of the amount of traffic in Los Angeles,[2] and both also claim to have relatives in the Bay Area that they can stay with.

With regard to parties and witnesses, plaintiffs claim that AGDC's showing is inadequate and therefore entitled to little weight, as it has not named the witnesses, stated their location, or explained their testimony or the relevance. Plaintiffs note that AGDC refers to "supervisors" and "co-workers," but provides no details about those proposed witnesses.

Moreover, plaintiffs argue, in a class action, the location of plaintiffs' supervisors and co-workers is of minimal relevance because neither certification nor liability will turn on the testimony of either of those types of witnesses. In particular, they assert that with regard to class certification, the question of "predominance" will turn on whether the duties of TSMs are sufficiently similar, and that factor is location-neutral. Similarly, they contend that the primary question relating to liability will be whether the TSM position was properly classified by AGDC as "exempt," which they also claim is location-neutral.

As for documentary evidence, plaintiffs assert that such evidence can be accessed anywhere, as any document relevant to this litigation is "no doubt" available electronically.

Finally, plaintiffs argue that cost is not a factor in a case such as this, where one of

---

[2] It is 207 miles from Atascadero (where Vance lives) to Oakland, and 217 miles from Atascadero to Los Angeles. So, for Vance, the travel distance is about the same. However, it is 380 miles from Santa Barbara (where Marinus lives) to Oakland, and 95 miles from Santa Barbara to Los Angeles. So the distance for Marinus to travel to Oakland would be substantially greater than to travel to Los Angeles.

6

the parties is a huge corporation that can "well afford any cost." Plaintiffs also note that some of AGDC's corporate representatives may well be coming in from Virginia, and it makes no difference what airport they fly into.

The court finds that the motion must be GRANTED. As an initial matter, the parties do not dispute that the case could have been brought in the Central District.

The court finds that the convenience of the parties and witnesses favors transfer. While the main office of AGDC may be located in Richmond, VA, the main office for Region 5 (California) and the headquarters of the division for which the plaintiffs worked (54), including payroll and business offices, are both located in Pasadena, as are the individuals who were plaintiffs' supervisors.

Plaintiffs also reside in the Central District. However, they assert that based on where they live, it would be more convenient for them to drive to Oakland than to drive to Los Angeles. Marinus' argument is plausible, as Atascadero is approximately half-way between Oakland and Los Angeles, but Vance's argument as to the same issue is not, as Santa Barbara is much closer to Los Angeles. Nevertheless, the fact that both plaintiffs currently reside and formerly both worked and resided in the Central District makes their argument about convenience less than compelling.

As for the Jones factors, the first and second factors – the location where relevant agreements were negotiated and executed, and the state most familiar with the governing law – are not relevant to the analysis.

With regard to the third factor, the plaintiff's choice of forum is generally afforded considerable deference when the district court is considering a motion to transfer. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). However, the weight is less in cases where the plaintiff files the action as a class action. See, e.g., Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("[a]lthough great weight is generally accorded to a plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight"); Bennett v. Bed Bath & Beyond, Inc., 2011 WL 3022126 at *2 (N.D. Cal. July 22, 2011)

7

(putative class representative's choice of forum "is not entitled to the same degree of deference as an individual plaintiff pursuing her own claim on her own behalf").

Furthermore, "[t]he weight given to the plaintiff's choice of forum diminishes when the plaintiff resides outside the chosen forum." Valadez Lopez v. Chertoff, 2007 WL 2113494 at *2 (N.D. Cal. July 20, 2007); see also Gemini Capital Group v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998) (district court correctly acted on Ninth Circuit authority in granting less deference to plaintiffs' choice of forum where no plaintiff was a resident of that forum). "The policy behind not deferring to a nonresident plaintiff's choice of venue appears tied to the notion that plaintiffs should be discouraged from forum shopping." Williams, 157 F.Supp.2d at 1107.

Here, plaintiffs have filed a class action alleging wage-and-hour claims under state law, in a district where they do not reside and where they (largely) did not work. While this district does apparently have some connection with the subject matter of the case – since some of the putative class members live and work here, and since AGDC services tobacco stores here – that connection is certainly not more significant than the connection that the Central District has.

Indeed, in view of the fact that the named plaintiffs have no connection to the Northern District and the facts pertinent to their individual circumstances are centered in the Central District, the connection to the Central District is stronger. Thus, the court affords plaintiffs' choice of forum reduced deference. See, e.g., Lucas v. Daiichi Sankyo Co., 2011 WL 2020443 at *3 (N.D. Cal. May 24, 2011); Roling v. E* Trade Securities, LLC, 756 F.Supp. 2d 1179, 1185 (N.D. Cal. 2010).

With regard to the fourth factor – the respective parties' contacts with the forum – AGDC has contacts with (presumably) all four judicial districts in California, as it operates state-wide. However, its contacts with the Central District are probably more significant, because of the location of the Region 5 headquarters in Pasadena. And for purposes of this lawsuit, since the plaintiffs both worked out of the Pasadena-based district, AGDC arguably has stronger connections with the Central District than it does with the Northern

District. In addition, Marinus' and Vance's contacts with the Central District are obviously much stronger than their contacts with the Northern District, as explained above. Thus, this factor favors transfer.

With regard to the fifth factor – the contacts relating to plaintiffs' cause of action in chosen forum – the events about which the named plaintiffs complaint all occurred in the Central District, as that is where they were working when they were allegedly not paid overtime, not reimbursed for business-related expenses, and not provided meal and rest breaks, and allegedly became entitled to receive waiting time penalties. Thus, this factor favors transfer.

With regard to the sixth factor – the differences in costs of litigation in two forums – the only difference appears to be that it will cost AGDC more to bring witnesses up to this district than it would to produce them in the Central District. Marinus is just as close to Los Angeles as to Oakland, and Vance is much closer to Los Angeles. So as far as travel goes, it would be preferable to litigate the case in the Central District. This factor appears to favor transfer.

The seventh factor – the availability of compulsory process to compel attendance of non-party witnesses – does not seem relevant.

With regard to the eighth factor – ease of access to proof – it is not clear from the parties' papers whether the documentary evidence is or is not available electronically.

In sum, factors (1), (2) and (7) are not relevant, and do not enter into the calculus. Factor (3) does militate against transfer, but does not strongly favor plaintiffs' position. Factors (4), (5) and (6) favor transfer. It is unclear whether factor (7) does or does not favor transfer. Thus, on balance, the court finds that transfer is warranted.

## CONCLUSION

In accordance with the foregoing, the court finds that the parties have greater contacts with the Central District than they do with the Northern District; the claims and allegations made by plaintiffs have minimal connection with the Northern District, and arise from alleged conduct that occurred primarily in the Central District; the majority of potential

witnesses disclosed by the parties are in the Central District; and it would likely be more cost-effective for those non-party witnesses to have this case heard in the Central District. These factors, combined with the fact that both plaintiffs worked and reside in the Central District, weigh in favor of the transfer notwithstanding plaintiffs' desire to have the case heard in the Northern District.  Thus, the court ORDERS that this case be transferred to the Central District of California.

**IT IS SO ORDERED.**

Dated: February 22, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge